UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY TAYLOR,<br>Plaintiff,<br>v.<br>JEFF MACOMBER, et al.,<br>Defendants. | No. 2:26-cv-01906 DJC SCR P<br><br>ORDER AND<br>FINDINGS & RECOMMENDATIONS |

Plaintiff is incarcerated in state prison and proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff's complaint is before the undersigned for screening under 28 U.S.C. § 1915A. For the reasons set forth below, the undersigned finds that the complaint states the following cognizable claims:

1) First Amendment free exercise claim against Defendant Macomber in his official capacity and Defendant Arce in his individual and official capacities;

2) Religious Land Use and Institutionalized Persons Act claim against Defendant Macomber and Arce in their official capacities;

3) Tom Bane Civil Rights Act claim against Defendant Macomber in his official capacity and Defendant Arce in his individual and official capacities;

4) California Penal Code § 5009 claim, construed as a writ of traditional mandate under California Code of Civil Procedure § 1085, against Defendant Macomber in his official capacity.

The undersigned will direct Macomber and Arce to file a responsive pleading within 45 days and recommend the non-cognizable claims and defendants be dismissed.

## REMOVAL

### I. Procedural Background

Plaintiff initiated this action by filing a complaint in the Superior Court of California, Sacramento County, on April 29, 2025 (Case No. 25-cv-011114), against the following defendants in their official and individual capacities: (1) Jeff Macomber, Acting Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); (2) Ron Broomfield, Acting CDCR Director; (3) Carlos Arce, Acting Warden of Salinas Valley State Prison ("SVSP"), in his official and individual capacities; (4) H. Agilera, Deputy Warden at SVSP; (5) H. Moseley, Reviewing Authority;[1] and (6) L. Pennisi, Reviewing Authority. ECF No. 1-2 at 4-29.

Service of the initial complaint on Defendants Macomber, Arce, and Moseley was completed on April 22, 2026. Id. at 2; ECF No. 1-3 at 2. Plaintiff filed a motion for temporary restraining order ("TRO") on April 29, 2026. ECF No. 1-4. Defendants do not address the outcome of the TRO motion, but the docket reflects that the Superior Court later dropped the motion on September 2, 2026, after determining that Defendants' removal of the action to federal court divested its jurisdiction.[2]

On May 22, 2026, Defendants Macomber, Arce, and Moseley paid the filing fee and filing a notice of removal pursuant to 28 U.S.C. §§ 1441(a) and 1446. (ECF No. 1), thereby removing the action to this Court. Defendants further request that the undersigned screen the complaint pursuant to 28 U.S.C. § 1915A. Id. at 3. Plaintiff has not filed objections to the removal notice.

### II. Discussion

Under 28 U.S.C. § 1446(b)(1), the notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" Here, the record shows that Plaintiff served Defendants Macomber, Arce, and Moseley on April 22, 2026, within

---

[1] Mosely appears to be the true name of the individual Plaintiff referred to as "Moeckly" in the complaint and summons.

[2] The undersigned takes judicial notice of the Superior Court docket. See Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (a court may take judicial notice of undisputed matters of public record including documents on file in federal or state courts).

30 days of removal. ECF No. 1-2 at 2. Accordingly, Defendants' removal was timely. Venue is also proper in the Eastern District of California because this district encompasses Sacramento County, where Plaintiff filed his state court action. 28 U.S.C. §§ 1141(a), 1446(a).

The undersigned will next consider whether this Court has removal jurisdiction. Except as otherwise expressly provided by Congress, a defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). Federal courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts have an independent obligation to examine their own jurisdiction. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215 (1990).

"The general rule governing removal of actions from the state court to federal court is that for a district court to have federal question removal jurisdiction, a federal cause of action must appear on the face of the complaint." Felton v. Unisource Corp., 940 F.2d 503, 506 (9th Cir. 1991) (citing, *inter alia*, Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987)). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

Plaintiff's complaint raises five causes of action related to alleged interference with his free exercise of religious rights: (1) Tom Bane Civil Rights Act, California Civil Code § 52.1; (2) First Amendment Free Exercise Clause; (3) Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA"); (4) Tom Bane Civil Rights Act, California Civil Code § 52.1; and (5) California Penal Code § 5009. ECF No. 1-2 at 19-25. Plaintiff's First Amendment and RLUIPA claims confer this Court with federal question removal jurisdiction. See Ultramar America, Ltd. v. Dwelle, 900 F.2d 1412, 1413-1414 (9th Cir. 1990) (federal question jurisdiction exists if at least one claim in the complaint arises under federal law).

The undersigned will also exercise supplemental jurisdiction over plaintiff's state law religious discrimination claims, given they appear "so related to claims in the action within such

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see also Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 27 (2025) (a federal court may exercise supplemental jurisdiction over the state claim so long as it "'derive[s] from' the same 'nucleus of operative fact' as the federal one." (quoting Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966))). Having concluded federal question jurisdiction exists as to Defendants Macomber, Arce, and Moseley, the undersigned will proceed to screen the complaint.[3]

**STATUTORY SCREENING**

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In performing this screening function, the court must dismiss any claim that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial

---

[3] Defendants offer no authority for their implied position that the Prison Litigation Reform Act requires the screening of complaints brought by incarcerated litigants in state court and removed to federal court. Nevertheless, the undersigned recognizes that this is common practice among district courts in this Circuit and will proceed to screening. See Doe v. California, No. 1:25-CV-00751-JLT-SKO (PC), 2025 WL 1836338, at *1 (E.D. Cal. July 3, 2025) (similarly recognizing the common practice and collecting cases).

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**PLAINTIFF'S COMPLAINT**

Plaintiff was incarcerated at SVSP at all revenant times in the complaint. ECF No. 1-2 at 6. He has been a practitioner of the religion of Thelema since 1983. Id. at 8, ¶ 12; id. at 14, ¶ 38. The practice of Thelema mandates each adherent to have an altar with religious artifacts including but not limited to red or black altar and bed clothes, bandanas, oil diffusers, oils/colognes, perfumes, smoke products, candles, and incense. Id., ¶ 13. Plaintiff's religious exercise requires the use of tobacco products on his altar, in a charm bag carried on his person, and during ceremonials and rites. Id., ¶ 14.

Plaintiff states that he successfully went to court in 2006 and 2007 to secure his right to use tobacco products in the "Wheel of Love" ceremony. ECF No. 1-2 at 8, ¶ 15-16. In 2006, the Legislature enacted California Penal Code § 5030.1, which prohibits CDCR inmates from possessing tobacco products but exempts its use for religious exercises. Id. at 9, ¶ 17. CDCR implements this statute through California Code of Regulations, Title 15, § 3188. Id., ¶ 18. Petitioner alleges that Defendants Macomber and Broomfield have circumvented these laws by promulgating and enforcing other regulations that designate tobacco as contraband (Cal. Code Regs., tit. 15, § 3006(c)(18)) and issuing Rules Violations Reports ("RVRs") (Cal. Code Regs., tit. 15, §§ 3314(1) and 3315(a)(2)(D)) that result in the loss of privileges. Id., ¶¶ 19-21.

Plaintiff further alleges that Defendant Arce, the SVSP Warden, has denied his requests to use tobacco and offered a substitute, kinnikinnick, that does not conform with Plaintiff's religious expression. Id. at 11-12, ¶¶ 25-27. Plaintiff filed a grievance over the issue on December 15, 2023, which Defendant Agilera, the Deputy Warden, denied on January 29, 2024. Id. at 12, ¶¶ 28-29. On April 10, 2024, Defendant Moseley of the Office of Appeals ("OOA") denied Plaintiff's appeal. Id. at 13, ¶¶ 31. Plaintiff filed another grievance on August 20, 2024, seeking

permission to purchase various religious artifacts required for his religious practice. Id. at 15, ¶ 42. Defendant Pennisi denied Plaintiff's grievance on October 3, 2024, on grounds that CDCR provides a standardized list of approved religious property. Id. at 16, ¶ 43.

As noted above, the complaint raises five claims for relief:

1) Bane Act claim against all Defendants, ECF No. 1-2 at 19-20, ¶¶ 55-61;
2) First Amendment Free Exercise claim against all Defendants, id. at 20-21, ¶¶ 62-66;
3) RLUIPA claim against all Defendants, id. at 22-23, ¶¶ 67-71;
4) a duplicative Bane Act claim against all Defendants, id. at 23, ¶¶ 72-74;
5) California Penal Code § 5009 against all Defendants, id. at 24-25, ¶¶ 75-81.

Plaintiff appears to have inadvertently pled two Tom Bane Act claims. Both claims cite the correct statute but only Count Four is clearly labeled a Bane Act claim. Compare ECF No. 1-2 at 19 (Count One), with id. at 23 (Count Four). The undersigned will treat these two claims as one.

Plaintiff seeks, *inter alia*, declaratory relief as well as an injunction ordering Defendant Macomber to provide him with the religious artifacts necessary for his religious observance. ECF No. 1-2 at 26-27. Plaintiff also requests compensatory and punitive damages against each defendant. Id. at 28.

## LEGAL STANDARDS

### I. 42 U.S.C. § 1983

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes. Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

### II. Linkage

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v.

Department of Social Services, 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). A person deprives another of a constitutional right, within the meaning of § 1983, "if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). The requisite causation can be established either "'by some kind of direct personal participation in the deprivation' or 'by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Chaudhry v. Aragon, 68 F.4th 1161, 1169 (9th Cir. 2023).

## DISCUSSION

### I. First Amendment Free Exercise (Count Two)

#### A. Legal Standard

Incarcerated persons retain their First Amendment rights, including the right to exercise religious practices and beliefs. See McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987). To implicate the Free Exercise Clause, a plaintiff must demonstrate that prison officials substantially burdened the free exercise of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). The underlying religious belief must be "sincerely held." Malik v. Brown, 16 F.3d 330, 333 (9th Cir.1994); see also Shakur, 514 F.3d at 884-85 (noting that the "sincerity test," not the "centrality test," applies to a free exercise analysis).

"In ruling on a prisoner's First Amendment free exercise claim, [the Court must] first determine whether the challenged prison policy or practice substantially burdened the prisoner's free exercise of his or her religion." Long v. Sugai, 91 F.4th 1331, 1337 (9th Cir. 2024); see also Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015) ("A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion"). A substantial burden exists where the state "put [s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Board, 450 U.S. 707, 718 (1981). "'A substantial burden . . . places more than an inconvenience on religious

exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Jones, 791 F.3d at 1031-32 (citation omitted).

However, the free exercise right "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security." McElyea, 833 F.2d at 197; see also Al Saud v. Days, 36 F.4th 949, 957 (9th Cir. 2022) (stating that prisoner rights under the Free Exercise Clause are "necessarily limited by institutional objectives and by the loss of freedom concomitant with incarceration"). Thus, if the prisoner establishes a substantial burden, the Court then applies the "four factors set forth in Turner v. Safley, 482 U.S. 78 [ ] (1987) to determine whether the burden was 'reasonably related to legitimate penological interests.'" Long, 91 F.4th at 1337; Turner, 482 U.S. at 89; Shakur, 514 F.3d at 884. The four Turner factors that bear on whether a legitimate penological interest exists are: "(1) whether there is a valid, rational connection between a state interest and the prison regulation [or restriction]; (2) whether prisoners have an alternative method of engaging in religious practice; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates; and (4) the absence of ready alternatives to the challenged regulation" or restriction. Walker v. Beard, 789 F.3d 1125, 1138-39 (9th Cir. 2015) (citing Turner, 482 U.S. at 89-90); Jones, 23 F.4th at 1134-35.

**B. Analysis**

Plaintiff has stated a First Amendment Free Exercise claim against Defendants Macomber and Broomfield in their respective official capacities. Plaintiff adequately alleges that Macomber and Broomfield have substantially burdened his free exercise by creating and promoting regulations and CDCR policies that ban the religious artifacts necessary for his religious observance. Defendants may ultimately demonstrate a legitimate interest in these restrictions, but the undersigned cannot properly consider the Turner factors at this early stage of the proceedings. See Barrett v. Belleque, 544 F.3d 1060, 1062 (9th Cir. 2008) (noting district court "not in a position to decide, on the pleadings," whether a prison's rules "'further an important or substantial government interest,' or impose limitations 'no greater than is necessary'") (citing

Procunier v. Martinez, 416 U.S. 396, 413 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989)).

Plaintiff also seeks damages against Defendants Macomber and Broomfield in their respective individual capacities. However, as he sues Macomber and Broomfield only for their policymaking roles (the complaint does not ever establish their physical presence at SVSP or involvement in its operations relating to Plaintiff), he has not demonstrated their personal participation for purposes of an individual capacity claim. Thus, his claims against these two officials are best understood solely as official capacity claims. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("An individual is sued in his or her official capacity when suit is brought for official actions attributable to enforcement of a policy or custom, or for a decision as a final policy maker.").

Plaintiff has, however, stated a First Amendment claim against Defendant Arce, the SVSP Warden, in both his official and individual capacities. Plaintiff and Arce corresponded by letter regarding Plaintiff's 2006 court order and renewed request for tobacco products for the "Wheel of Love" ceremony. ECF No. 1-2 at 11-12, ¶¶ 25-26. Arce denied his request and offered kinnikinnick as a substitute, which Plaintiff maintains is a form of religious interference by coercion. Id. at 12, ¶ 27-28. This is sufficient at the screening stage to establish Arce's personal participation in the alleged rights deprivation.

Finally, Plaintiff has not stated a First Amendment claim against Defendants Moseley, Agilera, and Pennissi. The allegations against these defendants concern only their roles in denying Plaintiff's grievances and appeals. "Where the defendant's only involvement in the allegedly unconstitutional conduct is 'the denial of administrative grievances . . . the defendant cannot be liable under § 1983.'" Grenning v. Klemme, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014) (quoting Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)). The undersigned finds no reason to deviate from this general rule here given that Plaintiff does not identify any other unconstitutional behavior on their part. In fact, he generally accuses them of enforcing unlawful policies (e.g., the "Religious Personal Property Matrix") created and enforced by Defendants Macomber and Broomfield. See, e.g., ECF No. 1-2 at 17, ¶ 47.

Accordingly, Plaintiff has stated a cognizable First Amendment free exercise claim against Defendants Macomber and Broomfield in their official capacities, and against Defendant Arce in his individual and official capacities, only.

## II. RLUIPA

### A. Legal Standard

"RLUIPA guarantees an 'expansive protection for religious liberty.'" Johnson v. Baker, 23 F.4th 1209, 1214 (9th Cir. 2022) (quoting Holt v. Hobbs, 574 U.S. 352, 358 (2015)). It provides "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . unless the government demonstrates that imposition of the burden on that person . . . is in furtherance of a compelling governmental interest . . . and is the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a).

To state a claim under RLUIPA, a prisoner must show that: (1) he takes part in a "religious exercise," and (2) the State's actions have substantially burdened that exercise. Walker, 789 F.3d at 1134 (citing Shakur, 514 F.3d at 888-89). "If the prisoner satisfies those elements, then the State must prove its actions were the least restrictive means of furthering a compelling governmental interest." Walker, 789 F.3d at 1134 (citing Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005)).

### B. Analysis

For the same reasons identified as to plaintiff's First Amendment claim, the undersigned finds that Defendants Macomber's, Broomfield's, and Arce's alleged actions limiting Plaintiff's access to his requested religious artifacts substantially burdened his religious practice. See Meza v. Cal. Dep't of Corrs., No. 1:17-cv-00894-DAD-EPG, 2017 WL 5500625, at *5 (E.D. Cal. Nov. 16, 2017) ("[T]he RLUIPA substantial burden test is analyzed within the same Free Exercise Clause framework") (citing Int'l Church of Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1067 (9th Cir. 2011)); Warsoldier, 418 F.3d at 995-96 (citing to First Amendment cases to determine what constitutes a substantial burden under RLUIPA).

Monetary damages are not available against prison officials in their individual capacities under RLUIPA. Jones v. Slade, 23 F.4th 1124, 1140 n. 4 (9th Cir. 2022) (citing Sossamon v.

Texas, 563 U.S. 277, 285 (2011)). Therefore, Plaintiff may proceed on his RLUIPA claim against Defendants Macomber, Broomfield, and Arce in their respective official capacities only. For the same reasons stated in the First Amendment analysis above, Plaintiff has not stated a RLUIPA claim against Defendants Moseley, Agilera, or Pennissi.

## III. Bane Act

### A. Legal Standard

The Bane Act provides a cause of action for violations of a plaintiff's state or federal civil rights committed by "threats, intimidation, or coercion." Cal. Civ. Code § 52.1; Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1040 (9th Cir. 2018). For purposes of the Bane Act, "coercion is the application to another of such force, either physical or moral, as to constrain [the plaintiff] to do against his will something he would not otherwise have done." Johnson v. City of Atwater, No. 1:16-CV-1636 AWI SAB, 2019 WL 283707, at *5 (E.D. Cal. Jan. 22, 2019) (citation omitted), aff'd sub nom. Johnson v. Velazquez, 794 F. App'x 655 (9th Cir. 2020).

Plaintiff's Bane Act theory is that defendants "coerced [him] to forego his religious enjoyment" by enforcing unlawful regulations and policies and pushing substitute artifacts like kinnikinnick that did not conform to the tenets of his religion. See ECF No. 1-2 at 19, ¶ 56. The undersigned finds that for screening purposes only, these allegations are minimally sufficient to state a Bane Act claim against Defendants Macomber and Broomfield in their official capacities and against Defendant Arce in his individual and official capacities. The undersigned declines to address any potential Eleventh Amendment or other immunities at this early stage of the case and without the benefit of briefing from the parties. See Walden v. Nevada, 945 F.3d 1088, 1092-1095 (9th Cir. 2019) (noting that "[a] State's decision voluntarily to invoke the jurisdiction of a federal court by removing an action from state court to federal court can waive Eleventh Amendment immunity"); Aholelei v. Dep't of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (noting Eleventh Amendment immunity is an affirmative defense and can be waived) (citing Demshki v. Monteith, 255 F.3d 986, 989 (9th Cir. 2001)). Nor will the undersigned address Plaintiff's assertion of compliance with all state administrative exhaustion remedies, see ECF No. 1-2 at 7-8, ¶¶ 10-11, without input from Defendants. Cf. Jones v. Bock, 549 U.S. 199, 214-15

(2007) (explaining that a district court may sua sponte dismiss a complaint at screening where, taking the prisoner's allegations as true, it is clear from the face of the complaint that the prisoner failed to exhaust).

For the reasons stated above regarding his federal claims, Plaintiff's allegations of coercion by grievance denial are insufficient to state a Bane Act claim against Defendants Moseley, Agilera, and Pennissi. "If there is no constitutional violation, then the Bane Act claim fails." Ashford v. Hill, No. 5:22-CV-00846-SSS-KES, 2023 WL 5105827, at *7 (C.D. Cal. June 7, 2023) (citing Pryor v. City & Cty. of S.F., 672 F. App'x 751, 752 (9th Cir. 2017)), report and recommendation adopted, No. 5:22-CV-00846-SSS-KES, 2023 WL 4824916 (C.D. Cal. July 27, 2023).

**IV. Cal. Penal Code § 5009**

Plaintiff's final claim seeks relief pursuant to California Penal Code § 5009, which sets out the California State Legislature's intent that "all prisoners shall be afforded reasonable opportunities to exercise religious freedom." Cal. Penal Code § 5009. Plaintiff names all Defendants but specifically alleges that the statute imposes on Defendant Macomber a "mandatory duty" that he breached through his implementation of CDCR regulations and "oppresse[d] [Plaintiff's] religious beliefs and practices." ECF No. 1-2 at 24-25, ¶78-79.

The undersigned liberally construes this claim as seeking to enforce Penal Code § 5009 through a writ of traditional mandate under California Code of Civil Procedure § 1085. See United States v. Seesing, 234 F.3d 456, 462 (9th Cir. 2000) (courts must liberally construe pro se complaints, including matters from prisoners.). Generally, a § 1085 writ of mandate is available to "compel a public agency's performance or to correct an agency's abuse of discretion when the action being compelled or corrected is ministerial." California Pub. Recs. Rsch., Inc. v. Cnty. of Yolo, 209 Cal. Rptr. 3d 26, 46 (Cal. Ct. App. 2016).

The evidence for this reading is substantial. First, Plaintiff identifies Count Five as a state law claim. ECF No. 1-2 at 24. A federal claim is not plausible because Penal Code § 5009 is not enforceable via 42 U.S.C. § 1983 or otherwise. See Ellis v. City of San Diego, 176 F.3d 1183, 1189 (9th Cir. 1999) (affirming district court's dismissal of federal claim alleging violations of

California Penal Code because such provisions "do not create enforceable individual rights."). Second, although Plaintiff does not cite § 1085, he cloaks the claim in its language. See, e.g., ECF No. 1-2 at 24 (framing claim as a "failure to perform a mandatory duty"); id., ¶ 77 (alleging Macomber failed to perform a "ministerial act"). Third, the count's caption cites Jones v. Omnitrans, 22 Cal. Rptr. 3d 706, 709 (Cal. Ct. App. 2004), a case in which a former state employee brought a § 1085 challenge to his firing without a post-termination hearing. Id. at 24.

The undersigned acknowledges that "a number of courts have held that § 1085 does not apply to federal courts." Siskiyou Hosp., Inc. v. California Dep't of Health Care Servs., No. 2:20-CV-00487-TLN-KJN, 2022 WL 118409, at *5 (E.D. Cal. Jan. 12, 2022) (collecting cases); see also Hill v. Cty. of Sacramento, 466 Fed. Appx. 577, 579 (9th Cir. 2012) ("Cal. Civ. Proc. Code § 1085 authorizes only state courts to issue writs of mandate.") (unpublished); San Francisco Apartment Ass'n v. City & Cnty. of San Francisco, 142 F. Supp. 3d 910, 917 n.2 (N.D. Cal. 2015) ("[Section] 1085 is a 'procedural mechanism,' . . . not a substantive claim. . . . Moreover it does not apply in federal court.") (citations omitted); Y.A.R. v. Los Angeles Unified Sch. Dist., No. 2:25-CV-11341-CAS-SSCX, 2026 WL 504761, at *7 (C.D. Cal. Feb. 23, 2026) ("[A] writ of mandate under Section 1085 is not applicable in federal court, where proceedings are governed by the Federal Rules of Civil Procedure.").

However, other judges, while recognizing that "[a] federal court's exercise of jurisdiction over a state mandamus issue raises serious considerations regarding comity and federalism," have nevertheless determined that "[a] grant of supplemental jurisdiction of a California mandamus action is not prohibited." Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U., 980 F. Supp. 2d 1160, 1184 (E.D. Cal. 2013); see also Doe v. Cnty. of Sacramento, No. 2:21-CV-01438-MCE-CKD, 2022 WL 4280164, at *8 (E.D. Cal. Sept. 15, 2022) (denying motion to dismiss § 1085 claims where the defendants "have not shown that factors of comity should cause this Court to refrain from exercising jurisdiction over Plaintiffs' mandamus claim."); Twin Sisters Gun Club v. Emlen, No. 2:17-cv-01526 MCE-GGH, 2018 WL 1335394 (E.D. Cal. Mar. 15, 2018) (same).

At this early stage of the case, and without the benefit of briefing from Defendants on the propriety of the Court exercising supplemental jurisdiction on this count, the undersigned will

allow Plaintiff's § 1085 mandamus claim to go forward against Defendant Macomber in his official capacity. Accordingly, for screening purposes only, Plaintiff has adequately stated a claim to enforce California Penal Code § 5009 via a writ of traditional mandate under California Civil Procedure Code § 1085 against Defendant Macomber in his official capacity.

**V. Broomfield is a Redundant Official-Capacity Defendant**

As explained above, the undersigned finds that Plaintiff has adequately alleged First Amendment, RLUIPA, and Bane Act claims against Defendants Macomber and Broomfield, the alleged creators and enforcers of the CDCR policies in question, in their respective official capacities. However, "[i]t is not necessary to name multiple defendants in their official capacity. Plaintiff need only name that official who has some cognizance over the policy at issue and who could effectively issue orders within CDCR if the court were to rule in plaintiff's favor." Hodgins v. Woodford, No. S-05-0682 MCE GGHP, 2006 WL 2482423, at *2 (E.D. Cal. Aug. 28, 2006). Defendant Macomber, the current CDCR Secretary, meets these criteria. Moreover, as Plaintiff has already served Macomber, the undersigned finds that ordering service of an additional, redundant official-capacity defendant would only prolong the proceedings. Accordingly, in the interests of judicial economy, the undersigned will recommend that Defendant Broomfield be dismissed from the action as redundant. See Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008) (dismissal of redundant defendants is within the district court's discretion).

**VI. No Leave to Amend**

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. See Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014) (en banc); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato, 70 F.3d at 1005-06.

Above, the undersigned found that Plaintiff failed to state any individual capacity claims against Defendants Macomber, Broomfield, Moseley, Agilera, or Pennissi. These deficiencies cannot be cured by amendment. Macomber and Broomfield are policymakers and had no personal participation in the alleged denial of Plaintiff's religious accommodations at SVSP. Moreover, Plaintiff's challenge to Moseley's, Agilera's, and Pennissi's handling of his grievances cannot be cured by amendment. Accordingly, the undersigned will recommend that these claims be dismissed and will order service on Defendant Broomfield.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. In accordance with 28 U.S.C. § 1915A, the Court has screened the complaint and found that it states the following cognizable claims for relief:

   a. First Amendment free exercise claim against Defendant Macomber in his official capacity and Defendant Arce in his individual and official capacities;

   b. Religious Land Use and Institutionalized Persons Act claim against Defendant Macomber and Arce in their official capacities;

   c. Tom Bane Civil Rights Act claim against Defendant Macomber in his official capacity and Defendant Arce in his individual and official capacities;

   d. California Penal Code § 5009 claim, construed as a writ of traditional mandate under California Code of Civil Procedure § 1085, against Defendant Macomber in his official capacity.

2. Defendants Macomber and Arce have already been served. See ECF No. 1-2 at 2. Accordingly, Defendants Macomber and Arce shall file a responsive pleading within 45 days of this order.

Additionally, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's individual capacity claims against Defendant Macomber be dismissed without prejudice and without leave to amend;

2. Defendants Broomfield, Moseley, Agilera, and Pennissi be dismissed without prejudice and without leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 2, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE